# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOHAMMED EL MAJOUTI,<br>Petitioners,<br>v.<br>U.S. ATTORNEY GENERAL/ICE, et al.,<br>Respondents. | Case No. 2:26-cv-01345-JLT-EPG-HC<br><br>FINDINGS AND RECOMMENDATION TO GRANT FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS AND DIRECT RESPONDENTS TO IMMEDIATELY RELEASE PETITIONER<br><br>(ECF No. 8) |

Petitioner, represented by counsel, is a federal immigration detainee proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. For the reasons set forth herein, the undersigned recommends that the first amended petition for writ of habeas corpus be granted and Respondents be directed to immediately release Petitioner.

## I.

## BACKGROUND

Petitioner is a citizen of Morocco who entered the United States without inspection in May 2022 in order to seek asylum. Petitioner was apprehended by immigration authorities upon entry and subsequently released from custody on his own recognizance. (ECF No. 8 at 6; ECF No. 10-1 at 13.[1]) On September 19, 2024, an immigration judge ("IJ") granted withholding of removal to Morocco pursuant to 8 U.S.C. § 1231(b)(3). Petitioner and the government both waived appeal. (ECF No. 8 at 6; ECF No. 10-1 at 15–18.) On October 15, 2025, an IJ issued an

[1] Page numbers refer to ECF page numbers stamped at the top of the page.

amended order ordering Petitioner removed to Morocco but withholding removal to Morocco pursuant to 8 U.S.C. § 1231(b)(3). Petitioner and the government both waived appeal. (ECF No. 10-1 at 20–23.)

U.S. Immigration and Customs Enforcement ("ICE") required Petitioner to regularly report to a field office as a condition of his release, and Petitioner attended each of his scheduled ICE check-in appointments for over three years. (ECF No. 8 at 6.) On February 12, 2026, Petitioner reported to an ICE field office for a regularly scheduled appointment and was detained. Petitioner was not provided with notice or an informal interview. Petitioner was transferred to the California City Detention Facility, where he remains in custody. (ECF No. 8 at 6.)

On April 6, 2026, Petitioner filed a petition for writ of habeas corpus. (ECF No. 1.) On April 15, 2026, Petitioner filed a first amended petition ("FAP"), raising the following claims for relief: (1) violation of procedural due process; (2) violation of substantive due process; (3) violation of Title 8 of the Code of Federal Regulations; and (4) violation of the Administrative Procedure Act. (ECF No. 8 at 11–16.) On April 30, 2026, Respondents filed an answer. (ECF No. 10.) On May 14, 2026, Petitioner filed a reply. (ECF No. 12.)

## II.

## DISCUSSION

### A. Zadvydas

Congress has enacted a complex statutory scheme governing the detention of noncitizens during removal proceedings and following the issuance of a final order of removal. "Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008).

"Section 241(a) of the Immigration and Nationality Act (INA), codified at 8 U.S.C. § 1231(a), authorizes the detention of noncitizens who have been ordered removed from the United States." Johnson v. Arteaga-Martinez, 596 U.S. 573, 575 (2022). "In particular,

§ 1231(a)(6) provides that after a 90-day 'removal period,'[2] a noncitizen 'may be detained' or may be released under terms of supervision." Arteaga-Martinez, 596 U.S. at 575. "After the removal period expires, the Government 'may' detain only four categories of people: (1) those who are 'inadmissible' on certain specified grounds; (2) those who are 'removable' on certain specified grounds; (3) those it determines 'to be a risk to the community'; and (4) those it determines to be 'unlikely to comply with the order of removal.'" Id. at 578–79 (quoting 8 U.SC. § 1231(a)(6)).

In Zadvydas v. Davis, 533 U.S. 678 (2001), the Supreme Court addressed a challenge to prolonged detention under § 1231(a)(6) by noncitizens who "had been ordered removed by the government and all administrative and judicial review was exhausted, but their removal could not be effectuated because their designated countries either refused to accept them or the United States lacked a repatriation treaty with the receiving country." Prieto–Romero, 534 F.3d at 1062 (citing Zadvydas, 533 U.S. at 684–86). The Supreme Court "read an implicit limitation" into the statute "in light of the Constitution's demands," holding that § 1231(a)(6) does not authorize indefinite detention and "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." Zadvydas, 533 U.S. at 689.

> After [a presumptively reasonable] 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the

---

[2] "The removal period begins on the latest of the following":

> (i) The date the order of removal becomes administratively final.
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B). "During the removal period, detention is mandatory." Johnson v. Guzman Chavez, 594 U.S. 523, 528 (2021) (citing 8 U.S.C. § 1231(a)(2)). The "removal period in § 1231(a)(1) will commence even if a stay of removal is entered while a federal court . . . considers a petition for review of a denial by the Board of Immigration Appeals of an alien's motion to reopen[.]" Aleman Gonzalez v. Barr, 955 F.3d 762, 767 (9th Cir. 2020) (citing Diouf v. Mukasey, 542 F.3d 1222, 1230 (9th Cir. 2008)), rev'd on other grounds and remanded sub nom. Garland v. Aleman Gonzalez, 596 U.S. 543, (2022).

> "reasonably foreseeable future" conversely would have to shrink. This 6–month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

Zadvydas, 533 U.S. at 701.

Respondents contend that Petitioner's detention is lawful under 8 U.S.C. § 1231(a)(6), Petitioner was re-detained in February 12, 2026, the Court should not count the five weeks Petitioner was detained in 2022, and "Petitioner is well within the presumptively reasonable six-month period and is not eligible for habeas relief" under Zadvydas. (ECF No. 10 at 4.)

> However, the burden-shifting framework from *Zadvydas* does not apply here. As another district court noted in a similar context, "[t]his case is not about ICE's authority to detain in the first place upon an issuance of a final order of removal as in *Zadvydas*." *Nguyen v. Hyde*, 788 F. Supp. 3d 144, 152 (D. Mass. 2025). As in *Nguyen*, "[t]his case is about ICE's authority to *re-detain* [petitioner] after he was issued a final order of removal, detained, and subsequently released on an [order of supervision]." *Id.* "[T]his is not your typical first round detainment of an alien awaiting removal. Petitioner was previously detained, then released on supervised release for several years, and his 90-day removal period expired." *Escalante v. Noem*, No. 9:25-CV-00182-MJT, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025).

Yan-Ling X. v. Lyons, 813 F. Supp. 3d 1157, 1163 (E.D. Cal. 2025).

**B. Violation of Title 8 of the Code of Federal Regulations**

In Count Three of the FAP, Petitioner asserts that by revoking his release without notice of the reasons for revocation nor an informal interview, Respondents violated both their own regulations and Petitioner's right to due process. (ECF No. 8 at 15.) "Specific regulations, 8 C.F.R. §§ 241.13(i) and 241.4(l), govern how and when ICE may revoke the release of a noncitizen who has been ordered removed." Yan-Ling X., 813 F. Supp. 3d at 1162. 8 C.F.R. § 241.13(i) provides in pertinent part:

> (1) Violation of conditions of release. Any alien who has been released under an order of supervision under this section who violates any of the conditions of release may be returned to custody and is subject to the penalties described in section 243(b) of the Act. In suitable cases, the HQPDU shall refer the case to the appropriate U.S. Attorney for criminal prosecution. The alien may be continued in detention for an additional six months in order to

> effect the alien's removal, if possible, and to effect the conditions under which the alien had been released.
>
> (2) Revocation for removal. The Service may revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future. Thereafter, if the alien is not released from custody following the informal interview provided for in paragraph (h)(3) of this section, the provisions of § 241.4 shall govern the alien's continued detention pending removal.
>
> (3) Revocation procedures. Upon revocation, the alien will be notified of the reasons for revocation of his or her release. The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision. The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.

8 C.F.R. § 241.13(i)(1)–(3).

8 C.F.R. § 241.4(b)(4) provides:

> Service determination under 8 CFR 241.13. The custody review procedures in this section do not apply after the Service has made a determination, pursuant to the procedures provided in 8 CFR 241.13, that there is no significant likelihood that an alien under a final order of removal can be removed in the reasonably foreseeable future. However, if the Service subsequently determines, because of a change of circumstances, that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future to the country to which the alien was ordered removed or to a third country, the alien shall again be subject to the custody review procedures under this section.

8 C.F.R. § 241.4(b)(4). With regard to revocation, 8 C.F.R. § 241.4(*l*) provides in pertinent part:

> (1) Violation of conditions of release. Any alien described in paragraph (a) or (b)(1) of this section who has been released under an order of supervision or other conditions of release who violates the conditions of release may be returned to custody. Any such alien who violates the conditions of an order of supervision is subject to the penalties described in section 243(b) of the Act. Upon revocation, the alien will be notified of the reasons for revocation of his or her release or parole. The alien will be afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification.

> (2) Determination by the Service. The Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to Service custody an alien previously approved for release under the procedures in this section. A district director may also revoke release of an alien when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner. Release may be revoked in the exercise of discretion when, in the opinion of the revoking official:
>
> (i) The purposes of release have been served;
>
> (ii) The alien violates any condition of release;
>
> (iii) It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or
>
> (iv) The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate.

8 C.F.R. § 241.4(*l*)(1)–(2).

1. <u>Applicability of Regulations</u>

In the answer, Respondents argue "these regulations govern revocations of orders of supervision. As Petitioner was released on an order of recognizance, that release can be revoked at any time at the discretion of the government," citing to 8 C.F.R. § 236.1(c)(9) ("When an alien who, having been arrested and taken into custody, has been released, such release may be revoked at any time in the discretion of [the Department of Homeland Security], in which event the alien may be taken into physical custody and detained."). (ECF No. 10 at 4.) Petitioner contends that Respondents' "position is contrary to the plaint text of the regulations and recent precedent," citing to 8 C.F.R. § 241.4(b)(3) and noting that "[c]ourts within the Ninth Circuit have held that 8 CFR § 241 applies to noncitizens who were never released on Orders of Supervision." (ECF No. 12 at 4.).

As noted by Petitioner, the pertinent regulation states in pertinent part: "Aliens granted withholding of removal under section 241(b)(3) of the Act or withholding or deferral of removal under the Convention Against Torture who are otherwise subject to detention are subject to the provisions of this part 241." 8 C.F.R. § 241.4(b)(3). As Petitioner is a noncitizen granted withholding of removal under section 241(b)(3) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1231(b)(3), 8 C.F.R. § 241.4 applies to Petitioner. Further, courts have found 8 C.F.R.

§ 241.4 applies to noncitizens like Petitioner who were initially released on recognizance, not detained during the initial ninety-day removal period, and then re-detained after the ninety-day removal period had concluded. See, e.g., Gregorio Ordonez v. Bondi, No. 2:25-CV-02356-JHC-TLF, 2025 WL 3852444, at *8 (W.D. Wash. Dec. 19, 2025) ("The Government argued during oral argument that these regulations do not apply because petitioner was not detained during the initial 90-day removal period, and these regulations contemplate only continued detention beyond the 90-day period. But these regulations appear to be the only relevant regulations governing the determinations regarding custody under 8 U.S.C. § 1231(a)(6), beyond the initial 90-day removal period, and the Government does not point to any other regulations that would otherwise control."), report and recommendation adopted, 2026 WL 30022 (W.D. Wash. Jan. 5, 2026).[3]

2. Notice and Informal Interview

The FAP alleges that Petitioner was not provided with notice or an informal interview when he was re-detained after reporting to the ICE field office in Camarillo, California for a regularly scheduled appointment on or about February 12, 2026. (ECF No. 8 at 6.) Respondents do not contest these allegations.

As set forth above, even if "on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future," the government must follow the revocation procedures set forth in 8 C.F.R. § 241.13(i)(3):

> (3) Revocation procedures. Upon revocation, the alien will be notified of the reasons for revocation of his or her release. The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision. The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.

[3] In further support of this

Further, 8 C.F.R. § 241.4(l)(1) provides in pertinent part:

> (1) Violation of conditions of release. Any alien described in paragraph (a) or (b)(1) of this section who has been released under an order of supervision or other conditions of release who violates the conditions of release may be returned to custody. Any such alien who violates the conditions of an order of supervision is subject to the penalties described in section 243(b) of the Act. Upon revocation, the alien will be notified of the reasons for revocation of his or her release or parole. The alien will be afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification.[4]

Here, Respondents do not dispute that Petitioner was not notified of the reasons for revocation of his release and was not provided an informal interview. Thus, the evidence before the Court indicates that Respondents failed to follow the process required for re-detention with respect to the informal interview as required by 8 C.F.R. §§ 241.13(i) and 241.4(l). Hoac v. Becerra, No. 2:25-CV-01740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) ("Because there is no indication that an informal interview was provided to Petitioner[s], the court finds . . . [Petitioners'] re-detainment was unlawful."); Yang v. Kaiser, No. 2:25-CV-02205-DAD-AC (HC), 2025 WL 2791778, at *5 (E.D. Cal. Aug. 20, 2025) (finding that "failure to provide an informal hearing is alone sufficient to entitle petitioner to the requested" relief of release from custody).

"[W]here an immigration regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute and ICE fails to adhere to it, the challenged action is invalid." Huang v. Albarran, 818 F. Supp. 3d 1154, 1165 (E.D. Cal. 2026) (quoting Yan-Ling X., 813 F. Supp. 3d at 1166–67). Accordingly, the undersigned recommends finding that Petitioner's re-detention was unlawful and his immediate release from custody is warranted. See Ceesay, 781 F. Supp. 3d at 162 ("this Court cannot conclude that [Assistant Field Office Director] Robinson had the authority to revoke release, finds that Ceesay's release was not

---

[4] Although "DHS has asserted in other litigation that the notice [and interview] requirements set forth in 8 C.F.R. § 241.4(l)(1) do not constrain revocation of release pursuant to § 241.4(l)(2), several district courts have rejected that argument." Khamba v. Albarran, No. 1:25-CV-01227 JLT SKO, 2025 WL 2959276, at *8 n.13 (E.D. Cal. Oct. 17, 2025) (collecting cases and "agree[ing] with those decisions that the notice and interview requirements apply to anyone whose supervision has been revoked pursuant to 8 C.F.R. § 241.4(l)(1) or (2)."

lawfully revoked, and holds that he is entitled to release on that basis alone"); Nguyen, 788 F. Supp. at 152–53 ("ICE's individualized determination to re-detain Mr. Nguyen is not in compliance with 8 C.F.R. § 241.13(f), (i)(2)" and "[b]ased on ICE's violations of its own regulations, I conclude that Mr. Nguyen's detention is unlawful and that his release is appropriate."); Liu, 2025 WL 1696526, at *3 ("Accordingly, the Court concludes that because officials did not properly revoke petitioner's release pursuant to the applicable regulations, that revocation has no effect, and petitioner is entitled to his release (subject to the same Order of Supervision that governed his most recent release)."); Yan-Ling X., 813 F. Supp. 3d at 1167 ("Petitioner has shown that she is likely to succeed on her claim that ICE did not have sufficient grounds to re-detain her under the regulations, and that her re-detention was therefore unlawful. Her immediate release is required to return her to the status quo ante.")

### C. Due Process

"[M]any courts in this district have found that when a non-citizen subject to a final order of removal is released on OSUP and is re-detained years later, the non-citizen is entitled to a pre-deprivation hearing prior to detention due to an accrued liberty interest." Huang, 818 F. Supp. 3d at 1166 (citing J.L.R.P. v. Wofford, No. 1:25-cv-01464-KES-SKO (HC), 2025 WL 3190589, at *8–10 (E.D. Cal. Nov. 14, 2025); Alva v. Kaiser, No. 25-cv-06676-RFL, 2025 WL 2419262, at *3–5 (N.D. Cal. Aug. 21, 2025)). Applying the Mathews v. Eldridge, 424 U.S. 319 (1976), factors, the J.L.R.P. court "found that the petitioner was entitled to a bond hearing prior to re-detention because":

> (1) petitioner had a significant private interest in remaining free from detention after being out of custody for nearly four years and built normal attachments to life (2) the risk of erroneous deprivation is high because 8 C.F.R. §§ 241.13 and 241.4 do not provide for review of ICE's reasons for revocation by a neutral arbitrator and (3) the government's interest in detaining petitioner without a hearing is low because in immigration court, custody hearings are routine with minimal costs.

Huang, 818 F. Supp. 3d at 1166 (citing J.L.R.P., 2025 WL 3190589, at *9–10). "Similarly, in *Alva*, the court found a due process violation where the government detained a non-citizen with a final order of removal, released on OSUP for over six years, without a pre-deprivation hearing."

Huang, 818 F. Supp. 3d at 1166 (citing Alva, 2025 WL 2419262, at *3–5). Likewise, in Huang, the court found a due process violation where the government detained the petitioner with a final order of removal, released on OSUP for nearly seven and a half years, without a pre-deprivation hearing. Huang, 818 F. Supp. 3d at 1166–67.

Based on the foregoing, the undersigned recommends finding that "in the event of his re-detention, Petitioner has a right to a pre-deprivation hearing where the government bears the burden of showing that Petitioner's release poses a flight risk or danger to the community." Huang, 818 F. Supp. 3d at 1166–67 (citing J.L.R.P., 2025 WL 3190589, at *9–10; Alva, 2025 WL 2419262, at *3–5).[5]

## III.

## RECOMMENDATION

Accordingly, the undersigned HEREBY RECOMMENDS that:

1. The first amended petition for writ of habeas corpus (ECF No. 8) be GRANTED on Counts One and Three.
2. Respondents be directed to immediately release Petitioner from custody under the conditions of his most recent order of supervision.
3. Respondents be enjoined and restrained from re-detaining Petitioner unless there are material changed circumstances and a neutral decisionmaker determines that there is a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or Respondents demonstrate by clear and convincing at a pre-deprivation bond hearing before a neutral decisionmaker that Petitioner is a flight risk or danger to the community such that his physical custody is legally justified.[6]

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local

[5] In light of the Court's conclusions, the Court declines to address Petitioner's other claims for relief.
[6] "If the Respondents make the required regulatory efforts and showing of significant likelihood of removal within the reasonably foreseeable future while giving [Petitioner] the necessary due process, nothing in this [recommendation] will prevent them from re-detaining him or removing him." Escalante v. Noem, No. 9:25-CV-00182-MJT, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025).

Rules of Practice for the United States District Court, Eastern District of California. Within **FOURTEEN (14) days** after service of the Findings and Recommendation, any party may file written objections, **no longer than fifteen (15) pages, including exhibits**, with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned United States District Court Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **July 29, 2026**

/s/ Eric P. Grosjean
UNITED STATES MAGISTRATE JUDGE